IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH SMITH,               ) | |
| )  | |
| Plaintiff,            )  | |
| )  | |
| vs.                                              )  | Case No. 09-cv-0564-MJR |
| )  | |
| MICHAEL J. ASTRUE,         )  | |
| Commissioner of Social Security,   ) | |
| ) | |
| Defendant.          ) | |

**MEMORANDUM AND ORDER**

REAGAN, District Judge:

    A.    <u>Introduction</u>

Pursuant to 42 U.S.C. § 405(g), Kenneth Smith petitions this Court to review the final decision of the Social Security Administration denying him Supplemental Security Income ("SSI") under 42 U.S.C. § 1382, Disability Insurance Benefits ("DIB") under 42 U.S.C. § 423, and a Period of Disability ("POD") under 42 U.S.C. § 416(I). In addition to submitting the administrative record (Doc. 10, "R."), the parties have fully briefed their positions (Docs. 14, 19).

The decision which Smith challenges can be summarized as follows. By written opinion dated January 6, 2009, Administrative Law Judge ("ALJ") Joseph W. Warzycki concluded that Smith was not disabled and, despite "severe" chronic pain syndrome and affective mood disorder, had the residual functional capacity to perform sedentary work, albeit with a few restrictions (R. 12-23). The Appeals Council of the Social Security Administration denied Smith's request for review, making ALJ Warzycki's opinion the final decision of the Commissioner of Social Security (R. 4-6). ***See  Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).**

As is discussed further below, in conducting judicial review under § 405(g), a district court is limited to determining whether the final decision of the Commissioner is "supported by substantial evidence and based on the proper legal criteria." ***Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005),** *citing Scheck v. Barnhart,* **357 F.3d 697, 699 (7th Cir. 2004).** The court should consider both the evidence that supports and the evidence that detracts from the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Briscoe*, 425 F.3d at 351,** *citing Lopez ex rel. Lopez v. Barnhart,* **336 F.3d 535, 539 (7th Cir. 2003)**.

B. Issues Presented

Kenneth Smith's physical ailments are not in dispute, *per se*. Rather, this appeal centers around the sufficiency of the evidence and ALJ Warzycki's analysis. More specifically, Smith argues (Docs. 3, 14) that:

1. The ALJ's decision is not supported by substantial evidence;

2. The ALJ was swayed by the lack of a clear medical diagnosis, while ignoring medical opinions indicating that there was no definable solution to Smith's unquestioned severe pain; and

3. The ALJ erred in assessing Smith's credibility.

Defendant Astrue ("the Commissioner") counters that sufficient evidence in the record supports the ALJ's decision and that, despite his pain, Smith was properly assessed as being capable of performing sedentary work (Doc. 19).

C. Summary of Evidence and Relevant Procedural History

On May 25, 2006, Kenneth Smith applied for DIB and SSI, alleging the onset of disability as of September 17, 2005, due to chronic abdominal and hip pain (R. 70-73 and 414-417).

Medical records reflect that Smith sought emergency treatment on September 19, 2005 for severe pain on his right side (R. 290). As it was believed that Smith had a "back pull" or muscle spasm, he was prescribed Voltaren and Soma for pain relief and muscle relaxation (R. 290). Smith, a warehouse worker for Schnuck's Markets, was seen by physicians at the St. Louis Labor Heath Institute and was deemed unable to work (R. 291, 61).

He stayed off work and continued testing and treatment for pain which, by early October 2005, doctors speculated could be caused by chronic prostatitis (R. 292). The only remarkable finding was that Smith had a "mild" focal protrusion at the C4-5 level in his spine, with "very slight" impingement on the anterior margin of the cervical spinal cord, as well as disc spurring at C5-6, resulting in some narrowing (R. 344-345). By the end of 2005, doctors surmised there could be a neurological basis for Smith's pain, so Smith was referred to a neurologist (R. 296-297). Doctors also continued Smith's work slip through January 31, 2006 (R. 297).

After testing and examination, Dr. Paisith Piriyawat of the St. Louis University Department of Neurology opined that there was no neurological reason for Smith's pain (R. 328). However, Smith was directed to take Neurontin for pain relief (R. 328). According to neurosurgeon Dr. Daniel Scodary, Smith had a completely normal exam, and the doctor found Smith's complaints "atypical" (R. 327). Dr. Scodary referred Smith to a pain management clinic (R. 327).

On January 30, 2006, Dr. Stephen G. Smith, a pain management specialist, increased Smith's dose of Neurontin and also prescribed Lidoderm patches for pain relief (R. 325-326).

Another neurologist, Dr. Daniel T. Mattson, examined and tested Smith in early 2006. An MRI revealed minor narrowing of the T7-8 disc space (without herniation). Otherwise, tests, including a spinal tap to test for myelitis (spinal cord inflamation), were all normal, and Smith was

3

found to have full motor strength (R. 172-198).

On May 3, 2006, Dr. Mattson noted that taking Neurontin had reduced Smith's pain by about 50% (considered typical improvement), so Smith was directed to continue taking the drug (R. 176-177). Dr. Mattson did not think there was a "true neurologic cause" for Smith's symptoms and advised Smith to pursue pain management. Cymbalta was prescribed for Smith's related depression (R. 176-177).

In June 2006, Smith sought treatment from Pain Management Services and was seen by Dr. Sam Page (R. 271). Smith complained of severe abdominal pain – pain that he described as being both constant and intermittent (R. 271). Smith was diagnosed as having neuritis and "emerging" depression, for which Neurontin and Cymbalta again were prescribed (R. 273-274). Dr. Page observed that the pain prevented repetitive lifting and therefore precluded warehouse work (R. 274).

Two weeks later, the doctor noted that Neurontin seemed to be alleviating Smith's pain (R. 276). On August 4, 2006, Dr. Page concluded that Smith was affected by severe depression, and Smith was ordered off work through September 15, 2006. This meant that Smith had not worked for a full year since he first became symptomatic (R. 278).

A complete neurological work-up was performed, including an EEG and nerve velocity tests, as well as a Holter heart monitor test, gastrointestinal and blood tests. All were normal, although small fiber neuropathy could not be ruled out (R. 131-148). On September 1, 2006, Dr. Page stated that he did not have an answer for Smith's left flank pain and he did not have a lot of ideas for this difficult problem, but that antidepressants were related to Smith's difficulties, and his depression should be treated, along with continuing a neurological work-up (R. 132, 282).

A year later, in September 2007 (which was two years after becoming symptomatic), Smith sought treatment from Dr. Alberto Butalid, M.D., who diagnosed Smith with a skin infection, osteoarthritis, and chronic pain syndrome (R. 351-353). In December 2007, Dr. Raymond Leung, M.D., performed a consultative physical examination in connection with Smith's application for benefits. Dr. Leung observed that Smith's memory was intact, that Smith had a "mild" limp but walked 50 feet unassisted, and that Smith was able to tandem-walk and hop, heel-walk, toe-walk, and squat (R. 149). A decreased range of motion in Smith's lumbar spine was noted, but no atrophy or spasms. And Smith's finger movement, hands, and grip were all found to be fine (R. 150-153).

Smith underwent a psychological evaluation in December 2007 by Dr. Stephen G. Vincent, Ph.D. At that time, Smith described his pain as six or seven on a ten-scale *with* medication, and as a nine *without* medication (R. 146). According to Smith, he was depressed, he was having difficulty sleeping, his memory and focus were poor, and he lacked energy and ambition; but he denied being psychotic (R. 145-146). Dr. Vincent further observed that Smith walked slowly and exhibited hand tremors (R. 145). When tested, Smith was able to remember six numbers forward and four backward. He could also perform serial seven calculations from 100 back to 44 without error, but he exhibited a short term memory lapse (R. 147).

Based on Dr. Page's reports and his own testing and observations, Dr. Vincent opined that Smith's polyneuralgia and depression impaired his ability to function, his focus, concentration and pace, but Smith was not psychotic (R .147). Smith was diagnosed as having "major" depression, pain disorder with psychological factors and general medical conditions (R. 147).

In January 2008, in connection with the agency review of Smith's application for benefits, psychologist Dr. Howard Tin, Ph.D., concluded that Smith had the affective disorder of

"major depression" (*see* **20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.04** ) and somatoform disorder, meaning physical symptoms for which there are no demonstrable organic findings or known psychological mechanisms, i.e, pain disorder (*see* **20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.07)** (R. 154). Nevertheless, Dr. Tin concluded that these ailments only had a "mild" impact on Smith's daily activities and his ability to maintain concentration, persistence, and pace (R. 164). No so-called "C criteria" were present, meaning that Smith did not experience decompensation or any adjustment disorder (*see* **20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.02(C))**. Dr. Tin also noted that Smith was not receiving psychiatric treatment (R. 166).

In January 2008, agency physician Dr. B. Rock Oh, M.D., issued a residual functional capacity assessment premised upon a review of Smith's records. Smith was found capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, capable of standing and/or walking and/or sitting for six hours during an eight-hour work day, and with unimpaired ability to push and pull. Smith had neither manipulative limitations nor any environmental limitations (R. 169-172). Smith's "mild" limp, left side, hip and abdominal pain all were acknowledged, but Smith was deemed capable of walking 50 feet unassisted (R. 175). Smith's range of motion in the lumbar spine was noted, and his extension was limited to five degrees (*id.*). Dr. Oh concluded that Smith had the residual functional capacity for "medium" work activity *(id.*). A January 2008 clinical note reflects that Smith rated his pain as six on a ten-scale (R. 220-221). At that time, he was having trouble walking, and he described experiencing constant, burning pain (R. 221).

In March 2008, Smith sought emergency treatment for chest pain, but all test results were normal and he was discharged (R. 254-267, 359). In April 2008, after an extensive work-up at Barnes Jewish Hospital, Dr. Taylor Bear, M.D., concluded there was no neurological etiology for

Smith's abdominal pain (R. 354-355).

Lastly, in September 2008, Dr. Riaz A. Naseer, M.D., examined Smith relative to complaints of chronic pain uncontrolled by medication (R. 401). As to Smith's ability to perform work-related activities, Dr. Naseer concluded that Smith could lift and carry up to 20 pounds occasionally and 10 pounds frequently; he could sit for two hours at a time and for four hours out of an eight-hour work day; he could stand for one hour at a time and for two hours out of an eight-hour work day; and he could walk for an hour without any assistive device, even on uneven pavement (R. 406-407, 411). However, Dr. Naseer precluded Smith from ever climbing ladders, working around unprotected heights, working with moving machinery, and operating a motor vehicle (R. 409-410). Smith also was limited to only occasional use of ramps and stairs and activities involving balancing (R. 409). Nevertheless, Dr. Naseer indicated Smith's ability to tend to his personal hygiene and dress himself were not impaired.

Smith testified before ALJ Warzycki and was questioned by both the ALJ and Smith's own attorney. At that time, Smith, age 43, was married and living with his wife and two teenage children (R. 431-432). Smith has a GED and had been working until September 14, 2005 as a warehouseman, which required lifting up to 80 pounds (R. 433-434, 436). Smith stated that he cannot work due to hip pain, side pain, and his need to sit and rest (R. 438). Smith also described his principal impairments as pain, dizziness, trouble balancing, poor memory, trouble concentrating and depression (R. 444, 446, 450). Smith described experiencing radiating pain in the area of his ribs, side and upper leg (R. 449).

Smith indicated that he spent 70-80% of his days sitting in a padded, reclining lawn chair, watching television (R. 439, 451). Smith's wife and daughter handle the household chores

(R. 439).  However, according to Smith, he can lift and carry a bag of groceries, he occasionally cooks, and he feels capable of changing the sheets on a bed, but not vacuuming, mopping and sweeping (R. 440-441).  He explained that his strength was not impaired, but the painful aftereffects of lifting are what he avoids (R. 447).  Although Smith concedes that he can walk unassisted, he described himself as being slow to stand up, and he finds sitting and climbing stairs uncomfortable (R. 446-448).  Smith stated that he has difficulty showering and putting on his socks due to balance problems (R. 442, 448).

At the time of the hearing, Smith was taking Gabapentin (the generic name for Neurontin) for pain and Elavil (an antidepressant/anti-anxiety drug) to help him sleep, but he had stopped taking medication specifically designed for depression, because it made him "mean," and Cymbalta made him pass out (R. 444-446).  Although he acknowledged that two years earlier Neurontin had improved his pain by 50%, Smith credited Neurontin with mainly alleviating constipation (R. 449-450).

Smith's wife, Christine, also testified.  She described her husband experiencing progressively worse pain since 2005 (R. 457).   According to Christine, Smith can only sit for 20 minutes before he has to lay down, and he can only stand for five minutes (R. 458-459). Mrs. Smith testified that, as a result of her husband's impairment – particularly his inability to wait in line or sit for long – they can no longer shoot pool in a league, go to movies, or go out to eat, as they had in the past (R. 457-458). Mrs. Smith opined that Neurontin helped Smith but made him "mean" (R. 459-460).

Vocational expert Stephen Dolan testified that Smith's prior work as a warehouseman was unskilled, medium exertional work, performed at the heavy exertional level (R. 453.)

ALJ Warzycki posed several hypothetical questions to Dolan, each based on an individual plaintiff's age, and with Smith's same education and work experience (R. 454-455).

The first hypothetical was premised upon a residual functional capacity for sedentary work,[1] limited the individual to occasional climbing, balancing, stooping, crouching, kneeling and crawling, precluded the use of ladders, ropes and scaffolds, precluded concentrated exposure to moving machinery, unprotected heights, and required that the work be limited to simple repetitive tasks and instructions (R. 454). This hypothetical person could not perform Smith's past heavy work but could perform sedentary, unskilled jobs, such as assembler, cashier, and food/beverage order clerk (R. 454-455).

The second hypothetical posed to the vocational expert was premised upon Smith's own testimony, including his need to recline or be off his feet for 70% of the day (R. 455). Such an individual would be precluded from work activity (R. 455).

D. The ALJ"s Decision

ALJ Warzycki found that Smith suffered from two "severe" impairments: (1) chronic pain syndrome, and (2) affective mood disorder (R. 14). However, the ALJ concluded that those psychiatric ailments only resulted in mild restrictions of the activities of daily living and social functioning, plus moderate difficulties in maintaining concentration, persistence, or pace, with

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." **20 C.F.R. §§ 404.1567(a) and 416.967(a).**

no severe and repeated episodes of decompensation (the so-called "C criteria")(R. 14).

Although Smith's discogenic and degenerative back problems and possible arthritis were recognized, they were not deemed severe impairments (R. 15). ALJ Warzycki stated, "They are not, either singly, or in combination, more than slight abnormalities that do not have, either singly, or in combination, more than a minimal effect on the claimant"s ability to perform basic work-related activities" (R. 15).

Smith's impairments, singly or in combination, were not found to meet or equal any of the presumptively disabling conditions listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A (R. 15). Smith's chronic pain syndrome was specifically found *not* to meet or equal a presumptively disabling condition, because it did not result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation (R. 15; *see also* **20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07**).

Smith was found to have the residual functional capacity for sedentary work, in that he can lift/carry/push/pull 10 pounds frequently and occasionally; and he can sit/stand/walk for six hours each, for a total of eight hours during an eight hour period (R. 15). The ALJ did limit Smith to occasional performance of postural activities, preclude Smith from climbing ropes, ladders and scaffolds, limit his exposure to unprotected heights and machinery, and further limit Smith to simple, repetitive tasks and instructions, due to a mental impairment (R. 15-16). Obviously, the ALJ did not find Smith's statements concerning the intensity, persistence, and limiting effects of his impairments to be fully credible (R. 16).

ALJ Warzycki's written decision contains a lengthy recitation of Smith's medical history (R. 16-20). The ALJ noted, inter alia, the following.

In January 2006, just over four months after the onset date, Smith reported no pain to abdominal palpation, and he was walking with a normal gait. By May 2006, Dr. Mattson had no further treatment to offer other than increasing the dosage of Neurontin and prescribing an antidepressant (R. 17). Dr. Page had no answer for Smith's reported pain, which had no distinct trigger points but was helped by Neurontin (R. 17).

The ALJ discounted Dr. Vincent's conclusion that Smith's pain interfered with his ability to focus and concentrate, because there was no objective evidence that would preclude simple, unskilled work. For example, Smith could perform a significant course of "serial sevens" (R. 17-18). The ALJ similarly discounted the functional limitations assigned by Dr. Naseer, finding them internally inconsistent with the doctor's objective findings and the preponderance of the evidence in the record (R. 19).

Stated succinctly, the ALJ found that three years of diagnostic testing and imaging, as well as the conservative course of treatment offered to Kenneth Smith, did not support his allegations of disability (R. 18-19). The ALJ further observed that no long-term use of strong pain medication, injections or surgery was suggested (R. 20):

> No doctor who treated or examined the claimant credibly stated or implied that the claimant was disabled or totally incapacitated, and no such doctor placed any specific credible long-term limitations on the claimant's abilities to . . . perform other basic physical or mental work-related activities, at least none that would preclude the range of sedentary work the undersigned Administrative Law Judge has found the claimant can perform.

The ALJ explained that he rejected Smith's subjective account of his impairments, because they were unsupported by the preponderance of the overall evidence (R. 22). Although Smith was found to be incapable of performing his past work (which was vocationally characterized

11

as "heavy" labor), the ALJ determined that Smith's younger age, education, and residual functional capacity for a range of sedentary work still qualified him to perform work available in Illinois (R. 21). ALJ Warzycki cited the unskilled, sedentary jobs described by vocational expert Stephen Dolan – assembler, cashier, and food and beverage order clerk – all of which were available by the thousands in Illinois (R. 21-22). Consequently, ALJ Warzycki ruled that Smith was not disabled (R. 22).

E.   Analysis

Analysis begins with reference to the governing legal standards, relevant statutes and regulations.

To qualify for DIB or SSI, a claimant must be "disabled" under the Social Security Act**, 42 U.S.C. § 423(a)(1)(E).** The Act defines "disabled" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

The Social Security regulations prescribe a sequential five-step test to determine whether a claimant is disabled. ***Briscoe*, 425 F.3d at 351-52.** Essentially, it must be determined:

> (1) whether the claimant is presently employed;
>
> (2) whether the claimant has an impairment or combination of impairments that is *severe*;

>  (3) whether the impairments meet or equal one of the *listed* impairments acknowledged to be conclusively disabling;
>
>  (4) whether the claimant can perform past relevant work; and
>
>  (5) whether the claimant is capable of performing *any work* within the economy, given his or her age, education and work experience.

***Id.*, citing Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).  Accord Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); 20 C.F.R. §§ 416.920(b-f) and 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.  The United States Court of Appeals for the Seventh Circuit has explained that this statute calls for de novo review of an ALJ's *legal* determinations but deferential review of *factual* determinations; indeed, as to the latter, the court must uphold any decision that is supported by substantial evidence.  ***Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008);** *Skinner v. Astrue*, **478 F.3d 836, 841 (7th Cir. 2007).**

So, this Court's task is not to decide afresh whether Kenneth Smith was, in fact, disabled.  Instead, this Court must decide whether ALJ Warzycki's legal determinations were erroneous and, more to the point herein, whether his factual findings were supported by substantial evidence.  *Id.*

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).   *Accord Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)(Substantial evidence means evidence that a reasonable person would accept as adequate to support the conclusion).**

The Seventh Circuit has articulated the "substantial evidence" test this way:  "An

13

ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." **Hopgood ex rel. L.G. v. Astrue**, 578 F.3d 696, 698 (7th Cir. 2009), *citing Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).

In reaching his decision, the ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." **Denton v. Astrue**, 596 F.3d 419, 425 (7th Cir. 2010), *citing Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). But the ALJ "need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion." **Denton, 596 F.3d at 425,** *citing Getch*, **539 F.3d at 480.**

In reviewing the ALJ's decision for substantial evidence, the district court considers the entire administrative record as a whole, but the court *may not* re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. **Terry, 580 F.3d 475.**

The undersigned Judge has examined the administrative record according to these guiding principles.

One other point bears mention as to the sequential test. A negative answer at any point in the five-step analytical process other than at the third step stops the inquiry and leads to a determination that the claimant is not disabled. **Garfield v. Schweiker**, 732 F.2d 605 (7th Cir. 1984). If a claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment (step three). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at step four to show that the claimant can perform some other job. **Rhoderick v. Heckler**, 737 F.2d 714, 715 (7th Cir. 1984).

Here, for purposes of review, there is no dispute that Smith had not worked from the alleged onset of disability (September 17, 2005) through the date of the ALJ's decision (January 6, 2009). So Smith has cleared the first hurdle in the analytical process.

Smith does not disagree that he has chronic pain syndrome and affective mood disorder, which are both "severe" impairments.[2] Smith does not specifically take issue with the ALJ's conclusion that his/Smith's discogenic and degenerative back problems and possible arthritis are not "severe" impairments. Therefore, the Court need not dwell at the second step in the analytical process.

Similarly, Smith does not specifically contest the ALJ's conclusion at the step three that Smith's impairments individually or in combination meet or equal one of the listed impairments acknowledged to be conclusively disabling. Rather, Smith challenges the ALJ's analysis and conclusion at step four, with respect to residual functional capacity ("RFC") – especially the assessment of Smith's pain, his credibility, and the "consistency" of Smith's medical records with his subjective statements about his impairment (Doc. 14, pp. 14-15).

A claimant's RFC must be supported by substantial evidence in the record. ***McKinnie v. Barnhart,* 368 F.3d 907, 910 (7th Cir. 2003).** As noted above, the ALJ need not address every piece of evidence or testimony in his decision, but his analysis must build an accurate and logical bridge from the evidence to his conclusion. ***McKinnie,* 368 F.3d at 910.**

According to Social Security Ruling ("SSR") 96-8p, "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or

---

[2] The ALJ's finding that Smith had chronic pain syndrome and that that ailment was "severe" negates Smith's repeated assertions that the ALJ did not believe that plaintiff's pain existed (*see* R. 14).

cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-7p further requires an ALJ to specifically articulate the rationale for any credibility determination relative to the consideration of pain and its functional effects. **Brindisi v. Barnhart**, 315 F.3d 783 (7th Cir. 2003).

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

**Brindisi**, 315 F.3d at 787, *quoting* **SSR 96-7p.**

Although ALJ Warzycki concluded that Smith's recognized chronic pain syndrome did *not* met all of the criteria of the somatoform listing (**20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.07**), the statements by the Seventh Circuit in **Sims v. Barnhart, 442 F.3d 536, 537-38 (7th Cir. 2006)**, properly frame the evaluation of pain in a situation such as the one at bar:

> The term "somatoform disorder" refers to what used to be called "psychosomatic" illness: one has physical symptoms, but there is no physical cause. This is a well-attested phenomenon....
>
> The problem in the disability context is proof (and it is a problem for the reviewing court as well as for the administrative law judge), though it is a problem only when the severity of the symptoms that are claimed to be disabling is in dispute. If you are disabled, you are entitled to disability benefits even if no cause for your disability can be assigned....
>
> The problem of proof arises when the symptoms are reported by the claimant but not verified by medical experts. The classic example is

>pain. Its existence cannot be verified, and since a person can experience intense, disabling pain even though no physical cause can be found, there is great difficulty in determining whether the person really is experiencing the pain that he reports. In such a case, the administrative law judge must of necessity base decision on the credibility of the claimant's testimony. Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying. Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported, as in *Zurawski v. Halter,* 245 F.3d 881, 887-888 (7th Cir. 2001), can the finding be reversed.

In the case at bar, Smith is correct that the medical records present a consistent picture. None of the numerous doctors who examined plaintiff since September 2005 have denied that he is experiencing pain. However, as early as December 21, 2005, Dr. Piriyawat, a neurologist, concluded after testing that there is no *neurological basis* for Smith's pain (R. 328). Dr. Mattson also concluded that there was no "true neurological cause" for Smith's pain (R. 176-177). Most recently, in 2008, Dr. Bear found no neurological etiology for Smith's pain (R. 354-355).

The doctors pursued "pain management" by prescribing Neurontin for pain, which at one point afforded Smith 50% relief (R. 328, 326, 274, 177). By mid-2006, Drs. Mattson and Page had associated Smith's pain with depression, and antidepressants were added to the "pain management" regimen (R. 177, 274). Still, as Dr. Naseer observed in late 2008, Smith's pain continued uncontrolled by medication (R. 401).

The ALJ accepted that Smith had chronic pain syndrome and affective mood disorder. Nevertheless, as ALJ Warzycki explained: "No doctor who treated or examined the claimant *credibly stated or implied* that the claimant was disabled or totally incapacitated, and no such doctor placed any specific credible long-term limitations on the claimant's abilities to . . . perform other basic physical or mental work-related activities, at least none that would preclude the range of

17

sedentary work ...." (R. 20, emphasis added).

Smith ignores the linchpin of the ALJ's analysis, the requirement that one's impairments prevent an adjustment to any other type of work. **20 C.F.R. ¶¶ 404.1520(g) and 416.920(g).** With respect to the physical aspects of Smith's condition, although he had been kept off work since he first experienced pain in September 2005, by mid-2006 Dr. Page opined only that the pain prevented repetitive lifting and therefore precluded warehouse work, *not all work* (R. 274, 278). Dr. Oh believed Smith was physically capable of "medium" exertional work R. 175). As to the psychological aspects of Smith's condition, although both Drs. Vincent and Tin characterized Smith as having "major" depression – impairing focus, concentration, and pace – the effect was deemed only "mild" (R. 147, 164).

Smith gives greater weight to Dr. Naseer's opinion. Naseer indicated that Smith could sit for only two hours at a time and only four hours out of an eight-hour work day, and that he could stand for only one hour at a time and only two hours out of an eight-hour work day (R. 407). But the ALJ found the functional limitations ascribed by Dr. Naseer internally inconsistent with objective findings and the preponderance of the overall medical evidence (R. 19).

As detailed above, the record evidence renders Dr. Naseer's evaluation an outlier. Not only is there a lack of objective evidence in the overall record to support those limitations, but also Dr. Naseer's clinical observations were that Smith had a "normal" general physical and neurological examination and that he had no difficulty getting on and off the exam table, walking or using his hands and fingers (R. 402). Therefore, the ALJ had sufficient cause to discount Dr. Naseer's assessment of Smith's functional limitations.

Obviously, Smith's subjective statements about his pain and the resulting impairment underlie his physicians' decisions to prescribe pain medication. As discussed above, the ALJ did not wholly disbelieve Smith. Rather, Smith's subjective account of the intensity, persistence and the limiting effects of pain was merely limited to that which was consistent with the RFC. The ALJ explained that he had rejected Smith's subjective account of his impairments, because it was not supported by the preponderance of the overall evidence (R. 22).

The many doctors who treated Smith did not observe or record objective reports of physical limitation of the degree Smith described at the evidentiary hearing. Limiting Smith to sedentary work was consistent with Dr. Page's assessment (R. 274) and Dr. Leung's detailed observations that Smith had a decreased range of motion in his lumbar spine (R. 150 and 152). Plainly, the ALJ's rationale is supported by the record and therefore passes muster in accordance with **Sims**, **442 F.3d at 537-38.**

In fact, the ALJ's decision is unusually detailed and offers a systematic and thorough discussion of each finding, providing the required "logical bridge" between the evidence and the conclusions. Plaintiff Smith simply disagrees with the ALJ's ultimate conclusion that Smith's impairments do not preclude all work.

F.   Conclusion

The ALJ's decision is supported by substantial evidence – evidence a reasonable mind might accept as adequate. The ALJ furnished an ample logical bridge between the evidence and his conclusions. For all these reasons, the Court rejects Kenneth Smith's appeal (Doc. 3) from the final decision of the Social Security Administration denying him Supplemental Security Income,

19

Disability Insurance Benefits, and a Period of Disability, and **AFFIRMS** the Commissioner's decision in all respects.  The Clerk of Court shall enter judgment in favor of Defendant Commissioner and against Plaintiff Smith.

       IT IS SO ORDERED.

       DATED July 4, 2010.

                                           s/ ***Michael J. Reagan***
                                           Michael J. Reagan
                                           United States District Judge